431 A.2d 905

**COMMONWEALTH of Pennsylvania**

v.

**Melvin Douglas BROWN, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 26, 1980.

Decided July 2, 1981.

John H. Corbett, Jr., Patrick McFalls, Asst. Public Defenders, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant, Melvin Douglas Brown, tried on charges of murder and voluntary manslaughter, was found guilty by a jury of murder of the second degree.[1]  At trial, appellant raised the defense of not guilty by reason of insanity.  In support of his defense, appellant presented psychiatric testimony.

In his request for points of charge, appellant's counsel requested that the jury be instructed as to the consequences of a verdict of not guilty by reason of insanity.  This request

---

1.  Appellant's first trial also resulted in a judgment of sentence of murder of the second degree.  Upon appeal to this Court, judgment of sentence was vacated and a new trial granted.  *Commonwealth v. Brown*, 473 Pa. 562, 375 A.2d 1260 (1977).
This case was reassigned to the writer on February 13, 1981.

was denied. The defense renewed its request, however, after the prosecution's closing argument in which the prosecutor stated:

> "I believe I indicated in my very brief opening what we intended to prove, that it was a homicide and he did it, two of the main essentials. That has been accomplished. It would almost appear that we are getting down to, well, if you accept the fact that Melvin Brown didn't know what he was doing when he was up in that room, well then, put him out in the street." [2]

Again, the court refused the defense request for an instruction as to the consequences of a verdict of not guilty by reason of insanity. It did, however, instruct the jury that it should not concern itself with any possible future consequences of its verdict, stating that it was the court's duty to fix the penalty if the defendant was found "guilty." [3]

Nine days after the jury's verdict of guilty was returned, this Court rendered its decision in *Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349 (1977). *Mulgrew* unanimously held that "when insanity is raised as a possible defense to criminal charges, a jury must be instructed concerning the possible psychiatric treatment and commitment of the defendant after the return of a verdict of not guilty by reason of insanity." Id., 475 Pa. at 277–78, 380 A.2d at 352.

In denying appellant's post-verdict motions, in which appellant again alleged that it was incumbent upon the court to instruct the jury as to the consequences of a verdict of not guilty by reason of insanity, the trial court acknowledged this Court's decision in *Mulgrew* but held that a new trial was not required because *Mulgrew* was decided after appellant's trial had been completed. Because appellant's

---

**2.** Notes of Testimony at 497.

**3.** Notes of Testimony at 522–23, 547. The prejudicial effect of the court's failure to give an instruction as to the consequences of not guilty by reason of insanity was compounded by the verdict slip. This slip provided for the option of "guilty," but did not also provide for the option of "not guilty by reason of insanity."

conviction was not yet final at the time *Mulgrew* was decided, we hold that appellant is entitled to a new trial with an appropriate jury instruction on the consequences of a verdict of not guilty by reason of insanity. Thus, we vacate the judgment of sentence and remand for a new trial.[4]

In this Court's recent decision in *August v. Stasak*, 492 Pa. 550, 424 A.2d 1328 (1981), in the context of a civil proceeding, this Court reaffirmed the principle that a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur before the judgment becomes final. We held that appellants were entitled to the benefit of our holding in *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193 (1977) (absent prejudice insured's late notice of loss or accident to insurance company not a release of insurance company from liability), decided while their case was on direct appeal. Mr. Justice Larsen, writing for the Court, stated:

"Since no distinction can be drawn between appellants and the injured party in *Brakeman,* the same relief should be available. See *Gibson v. Commonwealth,* 490 Pa. 156, 165, 415 A.2d 80, 85 (1980) where in an analogous situation Mr. Justice Roberts stated for this court: 'There is no principled reason to discriminate now against appellants whose causes also accrued before [the overruling decision] . . . both classes of suits affect the Commonwealth in equal measure, and therefore must be treated in like fashion.' "

*August v. Stasak,* supra, 492 Pa. at 556, 424 A.2d at 1331. Mr. Justice Larsen also noted that the decision was "in perfect accord with numerous recent decisions in this state," id., 492 Pa. at 556, 424 A.2d at 1331, citing this Court's decisions in *Gibson v. Commonwealth,* 490 Pa. 156, 415 A.2d 80 (1980) and *Kuchinic v. McCrory,* 422 Pa. 620, 222 A.2d 897 (1966). See also *Azzarello v. Black Brothers Co.,* 480 Pa. 547, 391 A.2d 1020 (1978); *Brubaker v. Reading Eagle Co.,* 422 Pa. 63, 221 A.2d 190 (1966).

4. In view of our disposition we do not address appellant's additional allegations of error.

■■■

■ Manifestly, our rule in civil cases which applies the law in effect at the time of appellate decision applies with equal force to criminal proceedings. The hardship, recognized by this court in *August v. Stasak,* supra, would befall parties if they were denied the benefit of prevailing law at the time of direct appeal is of even greater import in a criminal proceeding where the defendant's life and liberty are at stake. Thus,

> "[i]t would be the height of unreason to apply a stricter rule to criminal cases than to civil actions. The jurisprudential principles which mandate the application on direct appeal of an intervening change in law, even where an objection has not been interposed at trial, apply equally to both proceedings. Two paramount principles are implicated: judicial power and fairness to litigants."

*Commonwealth v. Hill,* 492 Pa. 100, 114, 422 A.2d 491, 499 (1980). (Opinion in Support of Reversal, Roberts, J., joined by O'Brien, C. J. and Flaherty, J.).

The principle that a court does not have power to enforce a law which is no longer valid but rather must apply the law as it exists at the time of its decision has been recognized since as early as *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801). In *Schooner Peggy,* Justice Marshall wrote:

> "But if, subsequent to the judgment and before the decision of the appellate court a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied .... In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside."

Id. at 110. Accord, *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *Thorpe v. Housing Authority,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *Ziffrin, Inc. v. United*

*States,* 318 U.S. 73, 63 S.Ct. 465, 87 L.Ed. 621 (1943); *Vandenbark v. Owens-Illinois Glass Co.,* 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941); *United States v. Chambers,* 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763 (1934); *Commonwealth v. Chaney,* 465 Pa. 407, 350 A.2d 829 (1975); *Commonwealth v. Saunders,* 456 Pa. 406, 322 A.2d 102 (1974); *Commonwealth ex rel. Smith v. Myers,* 438 Pa. 218, 261 A.2d 550 (1970); *Commonwealth v. Little,* 432 Pa. 256, 248 A.2d 32 (1968); *Commonwealth v. Cheeks,* 429 Pa. 89, 239 A.2d 793 (1968); *Commonwealth v. Jefferson,* 423 Pa. 541, 226 A.2d 765 (1967). See *Commonwealth v. Hill, supra,* 492 Pa. 100, 422 A.2d 491 (1980) (Opinion in Support of Reversal, Roberts, J., joined by O'Brien, C. J. and Flaherty, J.); *Commonwealth v. Ernst,* 476 Pa. 102, 381 A.2d 1245 (1977) (Opinion in Support of Reversal, Roberts, J., joined by O'Brien, J. and Manderino, J.); *Commonwealth v. Cain,* 471 Pa. 140, 369 A.2d 1234 (1977) (Opinion in Support of Reversal, Roberts, J., joined by O'Brien, J. and Manderino, J.).

■ Further, "it is unfair to litigants whose case is not yet final to subject them to a law that is now recognized as offensive. Evenhanded decision-making requires that similarly situated individuals on direct appeal be treated the same." *Commonwealth v. Hill, supra,* 492 Pa. at 115, 422 A.2d at 499 (Opinion in Support of Reversal, Roberts, J., joined by O'Brien, C. J. and Flaherty, J.). As this Court stated, "[n]o one would suggest that this Court would be violating any settled principles of law by making a change in the law and reversing a conviction, even though the law at the time of conviction supported the conviction. This has occurred innumerable times. . . ." *Commonwealth ex rel. Smith v. Myers, supra,* 438 Pa. at 236, 261 A.2d at 559. Certainly fairness demands that relief be granted not only in the first case which successfully contests a rule of law but also in all other cases pending on direct appeal which suffer from the same infirmity. To do otherwise in criminal proceedings is to impose an unwarranted hardship on defendants which affects their most fundamental rights of life and liberty, while serving no legitimate societal interest in apply-

ing an offensive law no longer valid. Cf. *August v. Stasak*, supra (in civil case, hardship to litigant held to require application of law as it exists at time of appellate review).

Thus, because appellant is entitled to the benefit of this Court's decision in *Commonwealth v. Mulgrew*, supra, judgment of sentence is vacated and the case remanded.

Judgment of sentence vacated and case remanded for a new trial.

NIX, J., files a concurring opinion.

LARSEN, J., files a dissenting opinion in which KAUFFMAN, J., joins.

NIX, Justice, concurring.

In granting relief to the instant appellant, the majority enters into a lengthy discussion as to whether the holding in *Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349 (1977) is applicable to the instant case. In my judgment, this inquiry is unnecessary in reaching the proper result here. For the reasons that follow, I believe it is clear that appellant is entitled to relief regardless of the decision as to the applicability of *Mulgrew*.

During the closing argument, the prosecuting attorney stated:

If you accept the fact that Melvin Brown didn't know what he was doing when he was up in that room, well then, *put him out in the street.*

N.T. 497 (Emphasis added).

The defense at trial was that Brown should be found not guilty by reason of insanity. The above referred to statement in the summation of the prosecutor clearly suggested that the verdict sought by the defense would in effect result in "putting Brown back on the street."

In his points for charge which had been submitted to the court prior to the closing arguments, the defense had requested a charge that the jury be informed of the available

alternatives under the Mental Health Procedures Act[1] if a finding of not guilty by reason of insanity was returned. After the remark by the prosecutor was made, defense counsel again urged the court to clarify the types of dispositions that would be available in the event of a finding of not guilty by reason of insanity. Upon the denial of these requests, the defense moved for a mistrial and that motion was also denied. In view of the misleading aspect of the prosecutor's remark, the defense was entitled to the sought after clarification and the court's failure to provide it constituted reversible error, which warrants the grant of a new trial.

LARSEN, Justice, dissenting.

I dissent. In *Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349 (1977), this Court held that a jury should be instructed on the possible dispositions of a criminal defendant found not guilty by reason of insanity. The majority now erroneously gives that holding retroactive application to this case where the jury was instructed and the verdict rendered prior to the *Mulgrew* decision. The rationale for the decision in *Commonwealth v. Mulgrew* was that since the jury already knew by common knowledge the consequences of verdicts of guilty and not guilty, it would also be appropriate to inform them of the consequences of a verdict of not guilty by reason of insanity. The new rule of criminal procedure announced in *Mulgrew* did not, therefore, rest upon a constitutional mandate, and thus should be given wholly prospective application. *See Commonwealth v. Milliken*, 450 Pa. 310, 300 A.2d 78 (1973); *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142 (1974); and *Commonwealth v. Geschwendt*, 271 Pa.Super. 102, 412 A.2d 595 (1979).

The majority, however, seeks to avoid this rule of prospectivity by analogy to a completely unrelated civil case, *August v. Stasak*, 492 Pa. 550, 424 A.2d 1328 (1981), which involved insurance coverage, and by wholly ignoring the

1. Act of July 9, 1976, P.L. 817, No. 143, § 406, 50 P.S. § 7406 (Supp. 1980–81).

effect their ruling has on the Commonwealth, its witnesses, the taxpayers, and society. The appellant in this case has already been twice tried for and found guilty of the 1973 stabbing death of a Pittsburgh woman in her downtown office. There was nothing inherently unfair or prejudicial about the second trial, and now eight years have elapsed since the incident. The witnesses have no doubt forgotten much of what occurred, some witnesses may no longer be available, and the Commonwealth will certainly be prejudiced in presenting its case again at this late date. Further, the taxpayers will be paying the bill for this prosecution for the third time, and the parents of the victim will be forced to again experience the emotionally debilitating task of reliving the events surrounding the senseless and brutal murder of their daughter (the victim was stabbed approximately 72 times, as well as strangled). And, what is received in exchange for these sacrifices—the repetition of a fair trial which could perhaps be moved closer to perfection. Such bargains reflect a myopic view of the needs of the administration of justice and the integrity of the judicial process and, additionally, are barren of any consideration of societal interests and a true sense of justice.

The judgment of sentence should be affirmed.

KAUFFMAN, J., joins in this dissenting opinion.