617 A.2d 1330

**Peter B. SUNDLUN**

v.

**Bruce G. SHOEMAKER, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 25, 1992.

Filed Dec. 29, 1992.

Sharon T. Pine, Lancaster, for appellant.

Mark E. Lovett, Lancaster, for appellee.

Before BECK, JOHNSON and HOFFMAN, JJ.

BECK, Judge:

The issue is whether in interpreting a contract under the Uniform Commercial Code the trial judge properly admitted parol evidence to explain the terms of the contract. We find the judge properly admitted the parol evidence and affirm the order of the trial court.

This is an appeal from an order of the trial court denying a motion for judgment n.o.v. or a new trial. Appellant Bruce G. Shoemaker contends that the trial court erred in admitting parol evidence of additional terms to supplement or explain terms of a written contract, and that the jury's verdict in favor of appellee Peter B. Sundlun was against the weight of the evidence.

Shoemaker is an antiques dealer and Sundlun was an antiques broker. Sundlun became interested in purchasing a rare "Thomas Mendenhall Cherry Tall Case Clock, Circa 1774" which was owned by Shoemaker. The parties discussed the clock on several occasions, disassembling it and examining its condition, and Shoemaker represented to Sundlun that, *inter alia*, the feet on the clock case were original. Sundlun agreed to purchase the clock for $97,500.

On March 9, 1988, the parties entered into a written agreement for the sale of the clock, which provided, in pertinent part:

* * * * * *

2. Seller [Shoemaker] represents and warrants the authenticity of the Clock through the description/authority of Lancaster Clocks prepared by Stacy B.C. Wood, Jr., attached hereto as Exhibit B and made a part hereof.

3. Seller herein personally guarantees the authenticity of the Clock and *if it is determined that the Clock is not as described, Seller shall purchase back from Buyer [Sundlun]*

*the Clock* for the purchase price plus interest of Six Percent (6%) computed from the date of purchase until March 1, 1991. The obligation of Seller to repurchase Clock shall automatically terminate the earlier of (1) March 1, 1991; or (2) the sale of the Clock by Buyer by [sic] a third party.

 \* \* \* \* \* \*

(Emphasis added). Attached to the written contract was a six page report by a research horologist, which described the clock and certified that it was "made in the period 1773–1774." The only statement about the clock's feet included in this report was that "Ogee feet carry the case." [1]

Shortly after the sale of the clock it was discovered that the clock's feet were not original. Both parties acknowledged that this fact substantially impaired the value of the clock. After attempting to resell the clock at various prices, Sundlun requested that Shoemaker buy back the clock in accordance with paragraph 3 of the written agreement. Sundlun's position was that the clock was *"not as described"* by the Wood report and the oral representations made by Shoemaker.

Shoemaker refused to repurchase the clock. He contends that the written agreement warranted only that the clock was "as described" in the Wood report, and that the replacement of the clock's feet did not affect the clock's "authenticity" as described in that report. Shoemaker argued that his own representation that the feet were original was not part of the "description" warranted by paragraphs 2 and 3 of the written agreement.

Sundlun then sold the clock at Christie's Auction in New York for $22,000, in order to mitigate his damages. Sundlun commenced this action against Shoemaker alleging breach of contract and breach of warranty. After trial, a jury returned a verdict in favor of Sundlun in the amount of $75,500, the difference between the clock's purchase price and its sale price at auction. Shoemaker filed a motion for judgment n.o.v. or,

---

1. Shoemaker's expert witness Stacy Wood testified that "Ogee is from a French word.... which is an S-shaped curve." N.T. 6/4/91 at 227.

in the alternative, a new trial, which motion was denied. This timely appeal followed.

Shoemaker raises the following issues:

1. Did the lower court err in admitting parol evidence consisting of oral statements of the parties to the contract which contradicted, rather than explained, the contract phrases "authenticity" and "as described"?

2. Was the jury's verdict against the weight of the evidence with regard to the commercially unreasonable manner in which Buyer resold the subject of the contract, an antique clock?

3. Was the jury's verdict against the weight of the evidence with regard to Buyer's untimely revocation of the contract?

4. Was the jury's verdict against the weight of the evidence with regard to the expiration of any contractual warranties upon the resale of the subject of the contract, an antique clock, to a partnership consisting of Buyer and his father?

5. Was the jury's verdict against the weight of the evidence with regard to the absence of a breach of contract?

6. Was the jury's verdict against the weight of the evidence with regard to the absence of a breach of express warranty?

*Brief of Appellant* at 2.

 We may not reverse an order denying a motion for a new trial unless the trial court clearly and palpably abused its discretion or committed an error of law that controlled the outcome of the case. *See Thompson v. City of Philadelphia,* 507 Pa. 592, 493 A.2d 669 (1985); *Gray v. H.C. Duke and Sons, Inc.,* 387 Pa.Super. 95, 563 A.2d 1201 (1989). Judgment n.o.v. is proper only in a clear case where, viewing the evidence in the light most favorable to the verdict winner, and granting the verdict winner every reasonable favorable inference, there is insufficient evidence to sustain the verdict. *See Stewart v. Chernicky,* 439 Pa. 43, 266 A.2d 259 (1970); *Ingrassia Construction Co. v. Walsh,* 337 Pa.Super. 58, 486 A.2d 478

(1984). Because we find that the trial court did not err in denying Shoemaker's motion for post-trial relief, we affirm.

■■■■ We first address Shoemaker's argument that the trial court erred in admitting parol evidence of oral representations Shoemaker made about the condition of the clock's feet.[2] The admission or exclusion of evidence is within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. *McCrery v. Scioli,* 336 Pa.Super. 455, 485 A.2d 1170 (1984). We find no such abuse of discretion in the trial court's admission of Shoemaker's statements about the clock's condition.

Shoemaker concedes that he told Sundlun that the feet were original and not replacements. N.T. 6/5/91 at 361–62. However, he claims that the admission of these statements improperly modified the "unambiguous language of the complete and integrated written contract," in violation of the parol evidence rule. We agree with the trial court that these oral representations simply were consistent additional terms which did not contradict but rather explained the meaning of terms in paragraphs 2 and 3 of the written agreement, and thus supplemented it, in accordance with the applicable law.

This sales transaction occurred in a commercial context, and is governed in Pennsylvania by the Uniform Commercial Code ("UCC"). 13 Pa.C.S.A. § 1101 *et seq.*[3] Specifically, the Pennsylvania UCC includes a parol evidence rule which provides as follows:

§ 2202. Final written expression: parol or extrinsic evidence

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included

---

2. The trial court denied Shoemaker's pre-trial motion in limine to exclude the parol evidence.

3. The expressed purposes of the Pennsylvania UCC are to: 1) simplify, clarify and modernize the law governing commercial transactions; 2) permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and 3) make uniform the law among the various jurisdictions. 13 Pa.C.S.A. § 1102(b).

therein *may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented*:

(1) by course of dealing or usage of trade (section 1205) or by course of performance (section 2208); and

(2) *by evidence of consistent additional terms* unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

13 Pa.C.S.A. § 2202 (Purdons 1984) (Emphasis added).

In this case, the parties have put forth different interpretations of the term "as described" in paragraph 3 of the written contract. Shoemaker argues that the phrase refers only to the description included in the Wood report appended to the contract. He asserts that his own statements about the original condition of the clock feet were not intended to be part of the description guaranteed by the written agreement, and that their substance *contradicts* the plain language of the contract in violation of the common law and UCC parol evidence rules. We disagree.

Under the UCC parol evidence rule, which governs this transaction, the oral statements about the clock feet were properly admitted as "consistent additional terms" which explained and supplemented the term "as described." 13 Pa. C.S.A. § 2202(2). Moreover, nothing in the parties' written agreement supports the contention that it was intended as a "complete and exclusive statement of the terms of the agreement." It did not contain an integration clause that would have made such an intention manifest.

■ As discussed in the Official Comment to Section 2202, the UCC's parol evidence rule allows the fact finder to consider: 1) that a writing which is final on some matters may not include all the matters agreed upon; 2) that the language used in a written agreement has the meaning which arises out of the commercial context in which it was used; and 3) that parol evidence may be admitted even if there has been no determination by the court that the written contract language is

ambiguous. *See* 13 Pa.C.S.A. § 2202, Comment 1(a)-(c). *See also Campbell v. Hostetter Farms, Inc.*, 251 Pa.Super. 232, 380 A.2d 463 (1977) (finding that contract language is ambiguous is not prerequisite to admission of parol evidence, nor is it required that the court, rather than the jury, determine the effect of parol evidence on meaning of the contract).

In other words, the UCC rule allows the jury to take into account consistent parol evidence when it attempts to discern the meaning of a written contract. In this instance, the oral statements were made by Shoemaker in the course of dealing. Unless carefully negated by the written terms of the contract, the parties' course of dealing, including any consistent oral representations, become an element of the meaning of the words used. 13 Pa.C.S.A. § 2202, Comment 2. If Shoemaker meant to limit his personal guarantee in paragraph 3 of the written agreement to the contents of the Wood report, he could have made this intention clear by simply changing the language to read "as described *in the Wood report attached hereto.*" [4] Because Shoemaker's representations about the clock feet did not contradict the express written terms of the agreement, they were properly admitted to explain or supplement that agreement.

Shoemaker's claims that the jury's verdict was against the weight of the evidence are also meritless. Essentially, he asks us to review various factual findings made at trial, and reevaluate the evidence presented. However, a jury verdict will not be set aside in the absence of a clear error of law or palpable abuse of discretion. *Deitrick v. Karnes*, 329 Pa.Super. 372, 478 A.2d 835 (1984). A reviewing court "may not reweigh evidence, and a new trial may not be granted merely because the jury could have drawn different conclusions or inferences...." *In re Condemnation by Com., Dept. of Transportation*, 90 Pa.Cmmwlth 39, 42, 493 A.2d 797, 799

4. It is undisputed that Shoemaker had the opportunity to and in fact did make changes to the contract as originally drafted by Sundlun's attorney, including changes in the terms of the "buy back" provision relating to the applicable interest rate and the duration of the guarantee.

(1985), *quoting Hilliard v. Anderson,* 440 Pa. 625, 271 A.2d 227 (1970). Shoemaker's complaint is that the jury did not believe his evidence, and instead credited the evidence presented by Sundlun. Credibility is for the jury. After a thorough review of the record, we agree with the trial court's conclusion that the evidence presented in this case was sufficient to support the jury's verdict.

Order affirmed.